## ENGELBERT v. BLANJOT.

April 23, 1836.

*Rule to show cause why a new trial should not be granted.*

A voluntary assignment of property by A to B in trust, to convert the same into cash, and thereout to pay *particular* creditors of the assignee only, and to return the surplus to the assignor, is not within the scope of the 5th section of the act of the 24th of March 1818, which requires voluntary assignments for the benefit of creditors to be recorded within thirty days, or otherwise to be taken as null and void against any of the creditors of the assignor. Such assignment is not therefore void as against creditors.

*It seems*, even if it were, it is only void as against creditors by execution, and not against a trustee of the assignor's estate, appointed under the act of the 26th of March 1814, upon the assignor's being discharged as an insolvent debtor.

**THIS** was an action of replevin, tried before JONES, J. On the trial the following facts appeared.

On the 13th of March 1833, Cyprian Poulallier, marble mason, assigned to Louis François Blanjot all the marble, sawed and unsawed, marble mantel pieces, &c.; also the tools, fixtures, and other personal property then in the shop and yards occupied by him, near Pine street in south Seventh street, *upon trust*, to sell the property so assigned, and with the proceeds thereof to satisfy himself with the sum of 850 dollars, and afterwards to pay Pierre Boneuil the sum of 250 dollars, Anthony Quervelle 50 dollars, Alphonse Lejambre 62 dollars, and return the surplus to the assignor. This assignment had never been recorded.

On the 3d of April 1833, Poulallier, on obtaining his discharge in the court of common pleas as an insolvent debtor, made an assignment, pursuant to the requisitions of the act of the 26th of March 1814 for the relief of insolvent debtors, to Louis François Blanjot and J. W. Goodridge, who declined the trust, and soon afterwards Leonard Engelbert, the plaintiff in this action, was duly substituted by the court of common pleas in their place.

In the schedule of property annexed to the petition of Poulallier, he returned the surplus which might result to him under his voluntary assignment of the 13th of March 1833, and also a claim of 121 dollars against Charles Gram. It also appeared by another schedule

[Engelbert v. Blanjot.]

annexed to his petition, that Poulallier had several other creditors besides those mentioned in the voluntary assignment, among whom is the plaintiff.

These assignments and proceedings formed a part of the evidence on the trial of the cause.

Engelbert, having thus become the assignee of Poulallier, issued this writ against Blanjot, to *replevy* the goods mentioned in the voluntary assignment of Poulallier to him of the 13th of March 1833. A part of them were replevied and delivered to the plaintiff, which he claims to hold as assignee in trust for all the creditors.

On the trial of the cause the plaintiff's counsel requested the judge to charge the jury:

That the voluntary assignment of Poulallier to Blanjot of the 13th of March 1833 was void, it not having been recorded according to the requirements of the 5th section of the act of the 24th of March 1818, and no property in the goods replevied passed by the same to the defendant; and that consequently the property passed to the plaintiff as trustee under the assignment to him made at the time of Poulallier's discharge under the insolvent law.

The *defendant's* counsel, denying this proposition, requested the judge to charge the jury, that supposing the law were with the plaintiff as to so much of the above proposition as relates to the nullity of the voluntary assignment for want of record under the act of 1818, yet the plaintiff, suing as assignee for the benefit of all the creditors of Poulallier, cannot take advantage of that defect; and that each creditor must pursue his own claim for himself to judgment against Poulallier, and having done that, he may levy his execution upon the property assigned to the defendant.

The judge ruled both these points in favour of the defendants; and these questions were reserved for the consideration of the whole court. The verdict was for the defendant, who obtained a rule to show cause why a new trial should not be granted; and assigned for reasons, that the judge erred in charging the jury as above specified.

*Troubat* and *F. W. Hubbell*, for the rule.

The 5th section of the act of the 24th of March 1818 declares all unrecorded "voluntary assignments in trust for the use of his (the assignor's) creditors, or for the use of such person to whom the assignment is made, and the other creditors of such assignor, null

I.—2 D

and void against any of the creditors of such assignor." *Purd. Dig.,
tit. Assignees.* It is therefore null as against the *cestui que trust* of
the plaintiff. No title passed to the defendant. The title to the
goods remained in the assignor ; and the legal effect of the assign-
ment made under the insolvent laws is to vest the same in the plaintiff.

*C. Gilpin* and *C. Ingersoll, contra.*

A voluntary assignment, such as this, to the use of particular cre-
ditors of the assignee, is not within the scope of the act of 1818, re-
quiring the recording within thirty days. At all events, if it be void,
it is only so against the *creditors* individually who may take the
property in execution, but not against an assignee who takes in trust
for the creditors by grant, and not by execution.

Cited and commented on in the argument : *Stat.* 13 *and* 27
*Eliz.* ; *Act of the 28th of May* 1715 ; *Act of the 4th of December* 1807 ;
3 *Rawle* 203, 204 ; 12 *Serg. & Rawle* 458 ; 4 *Rawle* 353, 354.

The opinion of the Court was delivered by

JONES, J.—The transfer of property is of common right : *prima
facie,* therefore, every such transfer made and executed in due form
of law is operative to pass the interest intended to be conveyed. The
common law, however, will not give validity to transactions founded
in fraud or immoral intention ; but the fraud must be shown by the
party alleging it in order to defeat an act which is apparently valid.

The statutes 13 and 27 *Elizabeth,* against frauds, go no further
than the common law as it is now understood. They were not de-
signed to invalidate fair transactions, but only to require, with a
view to general utility, certain signs of innocence, or to supply cer-
tain artificial tests or badges of honesty, which it would be difficult,
if not impossible, for fraud to assume.

But the 5th section of the act of the 24th of March 1818 has not
the same object. One design of it was to give notice of the trans-
action ; and in this point of view it may be classed with a similar
provision of the act of the 28th of May 1715, section 8, relative to
the recording of mortgages. Another design of it was to furnish
record evidence for the foundation of the proceedings to compel the
assignees to settle their accounts provided by the previous sections
of the act. It is however a provision in abridgement of common
right, and ought not to be extended by construction. In the case at

[Engelbert v. Blanjot.]

bar fraud in fact is not alleged ; but the plaintiff claims to defeat a fair transaction by mere force of positive law.

It appears to us that the voluntary assignment of Poulallier to the defendant is neither within the letter nor the spirit of the act of the 24th of March 1818. The 5th section is confined to the cases described by the 1st section ; and the 1st section applies to cases of the assignment of the whole or part of the assignor's estate in trust for the use of *his creditors*, or in trust for the use of the assignee and *the other creditors* of the assignor. The case under consideration is an assignment of a part of the estate of the assignor to the defendant, who was a creditor, in trust for the use of the defendant, and *some* of the other creditors of the assignor.

It is contended by the plaintiff that it is not necessary, in order to bring the case within the 5th section, that the trust should be for the benefit of *all* the creditors of the assignor. It must be admitted, however, that the language of the act, grammatically considered, is comprehensive enough to embrace the case of an assignment made for the benefit of *all* the creditors of the assignee ; and the case of an assignment for the benefit of a part of the creditors is not expressly within the act, although in the clause under consideration the legislature provide for the case of a partial assignment in respect of the assignor's estate.

It should be observed also, that by the next clause of this section, the court may be required to issue a citation to the assignee upon the application of *any of the creditors* of the assignor. Now it cannot be supposed that the legislature intended to give the benefit of process to any person not interested in the effects assigned ; and yet it is given expressly to *any*, therefore to *all* of the creditors of the assignor. If the legislature had intended to provide for cases like this, this provision would have been expressly limited to the persons *interested in the assignment*. No instance, it is believed, has occurred in which the courts have been called upon to compel an assignee, for the benefit of a part of the creditors, to account in the method pointed out by this act. If it could be done in this case, it might also be done in a case where one only of the creditors of the assignee has an interest in the effects assigned. Such a construction of the act would convert it into a mere method of proceeding between one man and another, standing in the relation of trustee and *cestui que trust*. That such was not the view of the legislature is obvious from the supplements to this act. The requisition of notice in public

[Engelbert v. Blanjot.]

newspapers evidently intends the case of persons who cannot be made parties to legal proceedings in the usual way; and if the original act is applicable to assignments made for the benefit of certain persons specially named in the instrument, as the plaintiff contends, much of the details of these supplements would be without value and inconvenient.

The other point raised by the defendant need not be decided in this case; and yet it seems decisive against the plaintiff. I will therefore merely add, that by the terms of the act of the 26th of March 1814, section 4, the trustee is vested with all the estate of the debtor *at the time of his appointment.* He comes therefore into the place of the debtor in respect to his property, rights and claims, and is bound by acts which would bind the debtor. This act contains no provision (corresponding with the 5th section of the act of the 4th of December 1807 relative to domestic attachments) which enables the trustee to recover property which has been fraudulently conveyed. When therefore there have been fraudulent transfers, each creditor must pursue his remedy at the common law, or under the statues against fraud, and recover satisfaction as he might have done previously to this act. Krause *v.* Beitel, 3 *Rawle* 203, 204; Thompson *v.* Dougherty, 12 *Serg. & Rawle* 458; Ankrim *v.* Woodward, 4 *Rawle* 353, 354.

A new trial in this case must be refused.

PETTIT, J., took no part in the judgment of the court, having been absent during the argument in consequence of indisposition.

Rule discharged. (*a*)

(*a*) But see the act of the 14th of June 1836, section 1, *Pamphlet Laws* 630.